596 A.2d 1271

**CITY OF WILKES–BARRE, Appellant,**

**v.**

**WILKES–BARRE FIREFIGHTERS ASSOCIATION, LOCAL 104, INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, AFL–CIO, Appellee.**

Commonwealth Court of Pennsylvania.

Argued June 13, 1991.

Decided Aug. 23, 1991.

169

Mark A. Van Loon, for appellant.

Thomas W. Jennings, for appellee.

Before COLINS and BYER, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

The City of Wilkes–Barre (City) appeals from an order of the Court of Common Pleas of Luzerne County which upheld an arbitration award but denied the request of the Wilkes–Barre Firefighters Association, Local 104, International Association of Firefighters, AFL–CIO (Firefighters) for payment of reasonable attorney's fees and court costs. We affirm.

The City is a home rule municipality governed by the Home Rule Charter and Optional Plans Law (HRCOPL), Act of April 13, 1972, P.L. 184, *as amended*, 53 P.S. §§ 1–101 through 1–1309. The Firefighters is an unincorporated association which serves as the exclusive bargaining representative.

The City and the Firefighters were parties to a collective bargaining agreement which was to expire on December 31, 1989. That 1988–89 collective bargaining agreement was the result of an arbitration award issued pursuant to the Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–217.10 (Act 111) and was not appealed by the City. That agreement contained a provision providing for the payment of medical insurance for retirees and their eligible dependents for three years following retirement, subject to the medicare offset.

The Firefighters' proposal for the new collective bargaining agreement included a provision seeking medical insurance for retirees and their eligible dependents for the balance of the retiree's life and that of his spouse. When negotiations broke down the Union requested arbitration pursuant to Act 111. After hearings were held, the Board of Arbitration (Board), in a two-to-one decision, awarded retiree health insurance as follows:

ARTICLE 21—RETIREE HEALTH INSURANCE

(a) In the event that a bargaining unit member should retire on or after January 1, 1990, the City shall, as of January 1, 1992, provide to that bargaining unit member and his spouse for his life and that of his spouse the Blue Cross/Blue Shield and Major Medical benefits provided to active bargaining unit members at the time of his retirement.

(b) The health insurance shall be provided free of charge to the retiree. The retiree's spouse shall be required to pay the then prevailing cost for such insurance.

The City appealed to the trial court requesting that the "Retiree Health Insurance" provision be deleted from the arbitration award. The City argued that the Board exceeded the scope of its authority by requiring it to perform an illegal act. Specifically, the City claims that pursuant to Section 2403 of The Third Class City Code (Code), Act of June 23, 1931, P.L. 932, *as amended*, 53 P.S. § 37403.53,[1] it

1. Section 2403 of the Code, *as amended*, 53 P.S. § 37403.53 states in pertinent part that the city council shall have the power:

was only authorized to contract for and pay the premiums for health insurance for current officials and employees or their dependents.

The Firefighters filed a cross petition requesting the trial court to affirm the arbitration award and for an award of attorney's fees and court costs. The trial court denied the City's petition and confirmed the arbitration award finding that the award was within the scope of the Board's authority. However, the court denied the Firefighters' petition for attorney's fees and costs finding that the actions of the City could not be classified as arbitrary, vexatious, or in bad faith.[2] This appeal followed.

The following issues are presented for our review: (1) whether the inclusion of the "Retiree Health Insurance" provision in the arbitration award constitutes an excess in the exercise of the authority and powers granted to the Board under Section 1 of Act 111, 43 P.S. § 217.1; (2) whether the arbitration award providing post-retirement health insurance benefits for the Firefighters mandates that the City perform an illegal act; and (3) whether the City is estopped from raising the illegality of the "Retiree Health Insurance" provision when a similar provision was a part of the prior collective bargaining agreement.

"[O]ur scope of review over an Act 111 arbitration award is in the nature of narrow certiorari and we may only inquire whether the arbitrator had jurisdiction, whether the proceedings were conducted with regularity, whether the arbitrators exceeded their authority and, in addition, may review any constitutional questions." *City of Scranton v.*

To make contracts of insurance with any insurance company, or nonprofit hospitalization corporation, or nonprofit medical service corporation, authorized to transact insurance business within the Commonwealth, *insuring its elected or appointed officers, officials and employes, or any class or classes thereof, or their dependents,* under a policy or policies of group insurance covering life, health, hospitalization, medical service, or accident insurance, ... and, for such purposes, to agree to pay part or all of the premiums or charges.... (Emphasis added.)

**2.** We do not address this issue concerning attorney's fees and costs, because it was not raised before this Court.

*Local 669, International Association of Fire Fighters,* 122 Pa.Commonwealth Ct. 140, 143, 551 A.2d 643, 645 (1988).

■ We first address the City's argument that the arbitration award constitutes an excess in the exercise of the authority and powers granted to the Board under Act 111 and requires the City to perform an illegal act. In *Appeal of Upper Providence Police Delaware County,* 514 Pa. 501, 526 A.2d 315 (1987) the Pennsylvania Supreme Court reiterated its examination of what constitutes an excess in the exercise of arbitrators' powers. The court noted that the arbitrators' powers are derived from Act 111 and that the arbitrators must act within the parameters of Act 111. Furthermore, "those powers must not be exercised in a manner that would require the public employer to perform an illegal act, i.e., an act that was not within the authority of the employer or that was prohibited by law." *Id.,* 514 Pa. at 513, 526 A.2d at 321 (footnote omitted).

The *Upper Providence* court then further explained this concept of what constitutes an excess of the exercise of the arbitrator's powers.

> Whether the decision maker in an adjudicatory process has been guilty of an excess in the exercise of power depends fundamentally on whether he has gone outside the boundaries of his authority. No adjudicatory body has unlimited discretion. At the very least, each and every adjudicator is bound by the Constitution of the United States; and most are bound by even tighter strictures.... In the instant case the adjudicatory power is an arbitration panel. Since it is a creature of the Legislature we must look to see if its powers were restricted in any way. If they were, and if the panel went beyond the limits of its authority, then it committed an excess in the exercise of power and the tainted portions of its mandate may be reviewed and corrected.

> In spite of the fact that neither the relevant constitutional provision nor the enabling legislation clearly delineates

the power of the arbitration panels, we are of the opinion that such panels may not mandate that a governing body carry out an illegal act. We reach this result by quite frankly reading into the enabling legislation the requirement that the scope of the submission to the arbitrators be limited to conflicts over legitimate terms and conditions of employment. Were this not so, virtually any issue could be submitted to the arbitrators under the guise of a labor conflict. Further, we fully realize that there will be issues that would be fully legitimate in the context of a private sector labor dispute which will not be legitimate in the context of a public sector labor dispute. Public employers are in many respects more limited in what they may do vis-a-vis their employees, and those limitations must be maintained. The essence of our decision is that an arbitration award may only require a public employer to do that which it could do voluntarily.

*Upper Providence,* 514 Pa. at 513–14, 526 A.2d at 321 (*quoting City of Washington v. Police Department of Washington,* 436 Pa. 168, 174–77, 259 A.2d 437, 441–42 (1969)).

As stated above, the City is a home rule municipality governed by the HRCOPL, which includes a list of limitations on municipal powers. Section 302 of the HRCOPL, *as amended,* 53 P.S. § 1–302 states in pertinent part as follows:

(b) No municipality shall ... (ii) exercise powers contrary to, or in limitation or enlargement of powers granted by acts of the General Assembly which are applicable in every part of the Commonwealth, ... nor (v) enact any provision inconsistent with any statute heretofore enacted by the General Assembly affecting the rights, benefits or working conditions of any employe of a political subdivision of the Commonwealth.

As it did before the trial court, the City argues that if it is required to abide by the "Retirees Health Insurance" provision as set forth in the arbitration award, it will be exercising a power in violation of the above quoted portion of the

HRCOPL. As previously indicated, the City also cites the Code provision concerning a political entity's authorization to purchase group health insurance, claiming that this provision is part of an act of the General Assembly that it would violate if it provided the health insurance at issue.

In support of its argument the City cites to the case of *Lower Merion Fraternal Order v. Lower Merion Township,* 511 Pa. 186, 512 A.2d 612 (1986), *appeal dismissed,* 518 Pa. 118, 541 A.2d 738 (1988).[3] In that case the police argued that the arbitrators exceeded their authority by eliminating post-retirement benefits. The legislation in question was the First Class Township Code, Act of June 24, 1931, P.L. 1206, *as amended,* 53 P.S. § 56523, which sets forth in language identical to that at issue here that a township may contract for insurance to cover its "employes or any class or classes thereof." Justice Zappala authored the opinion in support of affirmance in part and reversal in part of the Commonwealth Court's order affirming the trial court's dismissal of the union's petition for review. Justice Zappala stated that:

> [a]s a prerequisite for the township paying a premium for health and life insurance, a person must be an employee of the township. Once a person retires, he is no longer an employee of that business entity. Therefore, a township may not pay a premium for a nonemployee. Accordingly, if a township were to do so, it would be performing an illegal act.

*Id.* 511 Pa. at 192, 512 A.2d at 615.

Justice Larsen's opinion in support of reversal disagrees. He focuses on the fact that the word employees is followed by the phrase "class or classes thereof" and can include both active as well as retired employees. He further reasons that many employees agree to accept less during

3. We question the precedential value of this opinion by an equally divided court because, in a subsequent memorandum decision, the Supreme Court granted reargument and then proceeded to dismiss the appeal as having been improvidently granted, but did not rescind or overrule its opinion. We do, however, find the interpretation of pertinent statutory language both instructive and persuasive.

active employment and defer compensation such as health benefits that will begin at retirement. Therefore, the retiree's health benefits were earned during active employment. Justice Larsen concludes that there is no statutory prohibition to the maintenance of retired employees on a health insurance contract. *Id.*

The Firefighters cite *Township of Tinicum v. Fife,* 95 Pa.Commonwealth Ct. 516, 505 A.2d 1116 (1986), *petition for allowance of appeal denied,* 518 Pa. 656, 544 A.2d 1343 (1988), for the proposition that medical insurance benefits for retirees are a form of deferred compensation for services actually rendered in the past. *Fife* also construes the phrase "employes, or any class or classes thereof" to include retired employees.

In *Appeal of Upper Providence Police Delaware County,* 514 Pa. 501, 526 A.2d 315 (1987), the Supreme Court held that the arbitrators' decision eliminating post-retirement hospital and medical benefits was an illegal diminishment of retirement benefits to former and present employees. The court also concluded that the award eliminating the benefits was in excess of the arbitrators' powers.

Both *Fife* and *Upper Providence* are instructive, but neither case is directly on point. The court in *Upper Providence* did not discuss the legality of the grant of retirement benefits in the previous collective bargaining agreement. It only held that the diminishment of benefits by the board of arbitrators was illegal.

In the case *sub judice* the previous collective bargaining agreement contained a retiree health benefit provision. We know from *Upper Providence* that the elimination of this provision by the board would have been illegal. To have this provision removed from the collective bargaining agreement, the City must bargain for its removal. *City of Scranton.* On the other hand, nothing in either the HRCOPL or the Code concerning the authorization to contract for health insurance precludes the City from providing retiree health insurance. Therefore, the City may provide health insurance benefits to retirees voluntarily. The arbi-

tration award requiring the City to do that which is voluntary is not a mandate to carry out an illegal act and is within the arbitration panel's authority.

We now address the City's argument that it is not estopped from asserting the illegality of the post-retirement medical provision. "[A] public employer may assert the defense of illegality in some cases (initial award), but not in all situations (by agreement or by submissive default in an award)." *Id.* 122 Pa.Commonwealth Ct. at 147, 551 A.2d at 647. The City failed to challenge the retiree health insurance provision included in the prior arbitration award. It cannot acquiesce to the insertion of such a provision and subsequently contend that the provision is illegal and refuse performance. *Id.*

Accordingly, we affirm the trial court's decision to uphold the arbitration award.

## ORDER

AND NOW, this 23rd day of August, 1991, the order of the Court of Common Pleas of Luzerne County in the above-captioned matter is hereby affirmed.