### BOROUGH OF ELIZABETHTOWN, Appellant,

v.

### ELIZABETHTOWN NON-SUPER-VISORY POLICE NEGOTI-ATING COMMITTEE.

Commonwealth Court of Pennsylvania.

Argued Sept. 15, 1998.

Decided Oct. 30, 1998.

Susan R. Friedman, Lancaster, for appellant.

Gary M. Lightman, Harrisburg, for appellee.

Before McGINLEY and SMITH, JJ., and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

The Borough of Elizabethtown (Borough) appeals from the December 5, 1997 order of the Court of Common Pleas of Lancaster County (trial court) denying the Borough's petition to vacate a provision of the July 25, 1996 arbitration award concerning post-retirement hospitalization and major medical benefits for its police officers.[1] For the following reasons, we affirm.

When the Borough and the Elizabethtown Non–Supervisory Police Negotiating Committee (Committee), the certified collective bargaining representative for police officers employed by the Borough, could not reach an agreement during collective bargaining negotiations, they proceeded to binding arbitration pursuant to Act 111.[2] The panel of

---

1. The trial court granted the Borough's petition to vacate arbitration award as to the dues and assessments provision. On appeal, we consider only the court's denial of the petition as to post-retirement benefits.

2. Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–217.10. Act 111 applies only to police and fire personnel. In addition, we note that

arbitrators consisted of one arbitrator selected by the Committee, one selected by the Borough and a third, who served as chairman, selected by the other two.

On July 25, 1996, the chairman signed and issued the arbitration award. The Committee's arbitrator joined, but the Borough's arbitrator dissented to, *inter alia*, the provision awarding post-retirement hospitalization and major medical benefits. (Dissent to Arbitration Award, R.R. 15a.)

The disputed provision of the arbitration award, Section 8, provides as follows:

8. *Post–Retirement Health Care Benefits:*
Article 11, Section 10, shall be deleted and the following inserted in its place:

The Borough shall provide, at its own expense, the then-current Hospitalization and Major Medical benefits plan in effect at the time of retirement solely for the retiree subject to the following conditions:

A. The retired Officer or his spouse is not employed by an employer who makes available health care benefits to its employees and their dependents and pays the premium regardless of the extent of the coverage of such a plan.

B. The retired Officer reaches the age of 65 and becomes eligible for Medicare or similar government-paid health care benefits. If the Officer is eligible for such a plan, then said benefits shall reduce to a Medicare supplement.

C. This change shall be effective January 1, 1997.

D. This benefit shall apply only to Police Officers who reach normal retirement or disability retirement.

E. The retired Officer shall annually, at the request of the Borough, submit a notarized affidavit attesting that these above conditions have not occurred and that the

retired Officer is still eligible for the said Hospitalization and Major Medical.

F. The Borough's future expense shall be limited to the cost of the Hospitalization and Major Medical plans in effect at the time of the Officer's retirement.

(Arbitration Award, R.R. 12a.)

On August 21, 1996, the Borough filed a petition to vacate arbitration award, which the trial court disposed of in a December 5, 1997 opinion and order. The Borough limited its appeal to this Court to the issue of post-retirement benefits.

■ The narrow issue before us is whether the arbitrators in an Act 111 police interest arbitration proceeding exceeded their powers and jurisdiction by requiring the Borough to provide post-retirement hospitalization and major medical benefits for retirees. Under Act 111, our review of an arbitration award is in the nature of narrow certiorari and is limited to reviewing: 1) the jurisdiction of the arbitrators; 2) the regularity of the proceedings; 3) questions of excess in the arbitrators' exercise of powers; and 4) constitutional questions. *Pennsylvania State Police v. Pennsylvania State Troopers' Ass'n (Betancourt)*, 540 Pa. 66, 79, 656 A.2d 83, 89–90 (1995).

We first address the Borough's argument that the arbitrators exceeded their powers and jurisdiction by requiring it to provide post-retirement medical benefits for its retirees because such a provision is in violation of The Borough Code.[3] In support of its argument, the Borough cites Justice Zappala's opinion in the Supreme Court's evenly split decision of *Lower Merion Fraternal Order of Police Lodge No. 28 v. Lower Merion Township*, 511 Pa. 186, 512 A.2d 612 (1986), *appeal dismissed*, 518 Pa. 118, 541 A.2d 738 (1988).[4]

---

[t]he purpose of Act 111 was to insure appropriate pay increases and additional fringe benefits to policemen and firemen by collective bargaining, while guaranteeing, through the compulsory and binding arbitration provision, that these critical employees would not find it necessary to resort to strikes.
*County of Allegheny v. Hartshorn*, 9 Pa.Cmwlth. 132, 304 A.2d 716, 719 (1973), *aff'd*, 460 Pa. 560, 333 A.2d 914 (1975).

**3.** Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. §§ 45101–48501.

**4.** As the trial court noted, this Court in *Wilkes–Barre v. Wilkes–Barre Firefighters Ass'n Local 104*, 142 Pa.Cmwlth. 168, 596 A.2d 1271 (1991), *aff'd without opinion*, 533 Pa. 326, 623 A.2d 815 (1993), questioned the precedential value of the Supreme Court's opinion in *Lower Merion*. Specifically, we noted that, in a subsequent memorandum decision, the Supreme Court granted

In that case, an equally divided Supreme Court considered, *inter alia*, the issue of whether post-retirement benefits were within the scope of the arbitrators' authority. Justice Zappala wrote an opinion in support of affirmance in part and reversal in part. Therein, he determined that the arbitrators acted properly in terminating the post-retirement medical benefit coverage since retirees are no longer employees of the township. He reasoned that a township may not be required to pay a premium for a nonemployee because, requiring it to do so would be requiring it to perform an illegal act. In support of his decision, he interpreted Section 101 of The First Class Township Code,[5] which provides that a township may

> make contracts of insurance with any insurance company, association or exchange authorized to transact business in this Commonwealth insuring township employes or any class or classes thereof under a policy or policies of insurance covering workmen's compensation, life, health or accident insurance, and to contract with any such company granting annuities or pensioning of such employes, and to agree to pay part or all of the premiums or charges for carrying such contracts, and to appropriate monies from the township treasury for such purposes.

The Borough argues that Justice Zappala's reasoning in *Lower Merion* would be equally applicable to the case at bar since Section 1202 of The Borough Code[6] is very similar to Section 101 of The First Class Township Code. It points out that, like a township, a borough as a creature of the Commonwealth may only pay such health insurance premiums as are specifically allowed by statute

because it has no inherent powers and may only do those things which the legislature permits.

To the contrary, the Committee contends that the arbitration award in the instant case does not violate Section 1202 of the Borough Code. The Committee points out that Section 1202 allows a borough to contract for any "employee" or "class or classes thereof," which it argues would include both active and retired police officers. Thus, the Committee would rely upon Justice Larsen's opinion in *Lower Merion* determining that the awarding of post-retirement medical benefits would not mandate a municipal government to perform an illegal act. In support of his opinion in support of reversal, Justice Larsen noted that

> [t]he opinion in support of the affirmance focuses exclusively on the word 'employes' contained in the statute and determines that it applies only to present, active employes. However, the statute does not so limit the word 'employes'; rather, 'employes' is used in conjunction with 'class or classes thereof.' Black's Law Dictionary defines class as '[a] group of persons, things, qualities, or activities having common characteristics or attributes.' Black's Law Dictionary 225 (5th ed.1979). 'Class or classes' of employes can refer, *inter alia*, to executive versus legislative employes, appointed versus elected employes and active versus retired employes. All have the characteristic of being or having been employes of the municipality and thus fall within the statutory language of 'employes or class or classes thereof' for whom a contract for health insurance can be maintained.

---

reargument and then proceeded to dismiss the appeal as having been improvidently granted, but did not rescind or overrule its opinion. *Wilkes–Barre*, 596 A.2d at 1274 n. 3. We did, however, state that the Supreme Court's interpretation of pertinent statutory language was both instructive and persuasive.

**5.** Act of June 24, 1931, P.L. 1206, *as amended*, 53 P.S. § 56523.

**6.** In pertinent part, that section provides that a borough may

> make contracts of insurance with any insurance company, association or exchange, autho-

rized to transact business in the Commonwealth, insuring borough employes, or mayor and council, or any class, or classes thereof, or their dependents, under a policy or policies of insurance covering life, health, hospitalization, medical and surgical service and/or accident insurance, and to contract with any such company, granting annuities or pensions, for the pensioning of borough employes, or any class, or classes thereof, and to agree to pay part or all of the premiums or charges for carrying such contracts, and to appropriate moneys from the borough treasury for such purposes. 53 P.S. § 46202(37).

*Lower Merion,* 511 Pa. at 186, 512 A.2d at 618–19.

This Court in *Township of Tinicum v. Fife,* 95 Pa.Cmwlth. 516, 505 A.2d 1116 (1986), *petitions for allowance of appeal denied,* 518 Pa. 656, 544 A.2d 1343 and 518 Pa. 657, 544 A.2d 1344 (1988), determined that Section 101 of The First Class Township Code's phrase "employe or any classes thereof" includes retired police officers. We reasoned as follows:

> Section 1921 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921, requires us to construe a statute consistent with the manifest intent of the legislature. To construe the statute to mean that 'employees, or any class or classes thereof' does not include retired officers, as the township argues, would also prohibit the township from contracting for annuities or pensions for its employees, but the statute explicitly authorizes such actions. The legislature did not intend such an absurd result. The reasonable interpretation, consistent with the intent of the legislature, is that 'employe or any class or classes thereof' includes retired employees.

*Id.* 505 A.2d at 1120.

 Given the similarity between the language of Section 101 of The First Class Township Code and Section 1202 of The Borough Code, we reject the Borough's argument that Section 8 of the arbitration award violates The Borough Code. It would be illogical to interpret the legislature's use of the same phrase in two highly similar sections, albeit in two different Acts, to yield different results.

We next address the Borough's argument that the arbitrators exceeded their powers by awarding post-retirement medical benefits because such a provision is a nonmandatory subject of bargaining. In support of its ar-

gument, the Borough cites *Police Bargaining Unit of the Borough of Montoursville Police Department v. Borough of Montoursville,* 160 Pa.Cmwlth. 333, 634 A.2d 830 (1993), *petition for allowance of appeal denied,* 540 Pa. 635, 658 A.2d 798 (1995), which involved the specific level of police force strength as the nonmandatory subject of bargaining.

In that case, we noted that "[w]hile Act 111 does not expressly provide for the reservation of managerial rights, a management decision or action is deemed bargainable under Act 111 only where it bears a rational relationship to employees' duties." *Id.* 634 A.2d at 832. We held that the arbitrators exceeded their authority by mandating a specific level of police force strength because the total number of members on the force was not rationally related to the performance of the officers' duties such that it was a bargaining condition of employment under Act 111.

The Borough contends that the benefits at issue in the instant case are similarly a nonmandatory subject of bargaining and that the cases where courts upheld clauses awarding benefits relating to nonmandatory subjects are distinguishable from the instant case because those cases involved public employers who had previously voluntarily bargained away nonmandatory subjects or who had failed to appeal from a prior arbitration award. In addition, the Borough notes that it never agreed to bargain a post-retirement healthcare benefits clause.[7]

We note, however, that in cases where courts have overturned clauses providing for post-retirement medical benefits, the reasoning related, not to the fact that those benefits were a nonmandatory subject of bargaining, but instead to such factors as the unlawfulness of public employers awarding benefits to

---

7. In its answer to the petition to vacate arbitration award, the Committee admitted that the Borough never agreed to bargain post-retirement benefits. (R.R. 5a, 20a.) We note, however, that one party's refusal to bargain a clause does not mean that the issue cannot be submitted to arbitration. *See Salisbury Township v. Pennsylvania Labor Relations Board,* 672 A.2d 385 (Pa.Cmwlth. 1996) (holding that, even if a party believes issue to be an improper subject of bargaining, the

determination of whether an issue is bargainable and subject to arbitration must be decided by arbitrators in the first instance). The refusal is simply part of the impasse that led to the need for binding arbitration. The parties had an opportunity to present evidence and arguments in support of their respective positions and the arbitrators simply accepted the Committee's position on the post-retirement medical benefits issue.

retired non-employees or diminishing or eliminating those benefits. For example, in *Township of Wilkins v. Wage & Policy Comm. of the Wilkins Twp. Police Dep't,* 696 A.2d 917 (Pa.Cmwlth.1997), which involved a township which had previously voluntarily negotiated and agreed to provide post-retirement healthcare benefits for employees, we noted that it was unlawful to provide new benefits to former retirees, but that it was permissible to provide such benefits to future retirees. We never stated that post-retirement medical benefits for current employees was a nonmandatory subject of bargaining under Act 111.

In *Appeal of Upper Providence Police Delaware County,* 514 Pa. 501, 526 A.2d 315 (1987), the Supreme Court determined that the arbitrators' award eliminating post-retirement hospital and medical benefits for 1984 violated Section 302 of the Home Rule Charter and Optional Plans Law[8] because the township could not illegally diminish the retirement benefits of former and present employees. The Borough argues that Upper Providence Township's previous acquiescence to such a benefit distinguishes *Upper Providence* from the case *sub judice.*[9] We note, however, that the Supreme Court did not seem affected one way or another by Upper Providence's previous acquiescence to such a benefit or by its raising the illegality of such benefits at a later date.

In addition, citing the plain language of Act 111, the Committee argues in this case that post-retirement benefits are included in several of the mandatory subjects of Act 111. Under Act 111, police officers "have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits." 43 P.S. § 217.1. The Committee contends that the benefits at issue easily qualify as compensation, retirement or other benefits.

Specifically, the Committee notes that courts have already found that the nature of retirement benefits for public employees is that of deferred compensation for services actually rendered in the past and that those benefits are simply deferred compensation presently earned. In *Township of Tinicum,* a case in which this Court concluded that retired police officers were employees or any classes thereof for purposes of awarding medical insurance benefits, we also noted that

> [i]n Pennsylvania, the nature of retirement provisions for public employees is that of deferred compensation for services actually rendered in the past, thus reflecting contractual rights. Our Supreme Court in *Firemen's Relief Association of Washington v. Minehart,* 430 Pa. 66, 241 A.2d 745 (1968), defined 'pension' as a bounty for past services, designed to provide the recipient with his daily wants. The medical insurance benefit in issue here is a constitutional method of payment.

*Township of Tinicum,* 505 A.2d at 1119 (citations omitted) (footnote omitted).

The Borough argues that the post-retirement benefits at issue do not constitute deferred compensation. Specifically, it contends that they are not in the nature of pension or retirement benefits because they are to be paid only after the employee retires and is no longer an employee of the Borough. The Borough reasons that pension and retirement benefits are actually paid by the employer on behalf of existing active employees while such employees are actively employed and working for the public employer and that pension contributions are never made after an employee retires.

In addition, the Borough contends that the post-retirement benefits at issue involve an unknown payout at some future date, based on the plan in effect at the time that the employee retires. It contends that there would be much confusion and practical concerns with providing benefits to retirees who

---

8. Act of April 13, 1972, P.L. 184, *as amended,* 53 P.S. §§ 1–101–1–1309.

9. The Fraternal Order of Police noted that the benefit had been renewed through two collective bargaining agreements and one arbitration award since the township first agreed it to in 1976.

retire at different times and have different plans in effect at the time of their retirement.

In response to the Borough's arguments regarding the practical difficulties in implementing Section 8 of the arbitration award, the Committee contends that the post-retirement medical benefits at issue are no different from pension benefits. If one actuarially computed the amounts at issue, the post-retirement medical benefits potentially could be fully funded. In addition, the Committee points out that pension benefits are paid post-retirement. Finally, it notes that other public employers deal with the practical concerns of managing such benefits.

█ While it is true that providing new benefits to former retirees is unlawful,[10] here the arbitrators awarded future benefits to current employees for present services ren-

dered. Thus, we agree that the medical insurance benefits awarded in the future would be deferred compensation for services rendered in the past.

For the above reasons, we affirm.

### ORDER

AND NOW, this 30th day of October, 1998, the December 5, 1997 order of the Court of Common Pleas of Lancaster County is hereby affirmed.

10. *See Township of Wilkins v. Wage & Policy Comm. of the Wilkins Twp. Police Dep't,* 696 A.2d 917 (Pa.Cmwlth.1997).