**PENNSYLVANIA STATE CORRECTIONS OFFICERS ASSOCIATION, Petitioner**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 11, 2009.

Decided July 13, 2009.

Stephen J. Holroyd, Philadelphia, for petitioner.

Joel Tasca and Donna Page, Philadelphia, for respondent.

BEFORE: PELLEGRINI, Judge, and BUTLER, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge PELLEGRINI.

The Pennsylvania State Corrections Officers Association (Association) has filed a petition for review from an interest arbitration award (Award) that increased future retiree contributions for retirement health care benefits, changed the method of dispute resolution from grievance-arbitration to alternative dispute resolution, and allowed the Commonwealth to prohibit, after meeting and discussing the matter with the Association, smoking at the work site. For the reasons that follow, we affirm the Award regarding future retiree payments and smoking but vacate as to the requirement of alternative dispute resolution.

The Association and the Commonwealth of Pennsylvania, Department of Corrections and Department of Public Welfare (Commonwealth) were parties to an Act 195 [1] Collective Bargaining Agreement (CBA) covering the period from July 1, 2005, through June 30, 2008. The Association requested the Commonwealth to initiate collective bargaining for a successor contract in May 2007 in anticipation of a long collective bargaining process. After the parties reached an impasse, the issue was referred to mediation in accordance with PERA. When mediation failed, the Association petitioned the Pennsylvania Labor Relations Board (Board) to proceed to binding arbitration in accordance with Section 805 of PERA, 43 P.S. § 1101.805. [2]

---

1. Formally known as the Pennsylvania Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301.

2. Section 805 of PERA provides:

Notwithstanding any other provisions of this act where representatives of units of guards at prisons or mental hospitals or units of employes directly involved with and necessary to the functioning of the courts of this Commonwealth have reached

After the hearings, the Board issued an award setting forth terms and conditions of employment for bargaining unit members for the period of July 1, 2008, through June 30, 2011. The Association then filed a petition for review which is now before this Court seeking to vacate or modify the following portions of the Award, specifically:

- Item No. 4 regarding Article 24— (Employee Contributions) Eliminating the 1% cap on the retiree contribution rate and increasing it up to 3% by the year 2010;

- Item No. 18 regarding Article 8, Section 1—Requiring the pursuit of a grievance through Step 2 of the H–1 Alternative Dispute Resolution Process for complaints regarding food provided to the bargaining unit; and

- Item No. 7 regarding Article 33, Section 33—Allowing for policies to be established by the Commonwealth regarding the use of tobacco at the work site, including the prohibition of its use, after a "meet and discuss" with the Association.

---

an impasse in collective bargaining and mediation as required in section 801 of this article has not resolved the dispute, the impasse shall be submitted to a panel of arbitrators whose decision shall be final and binding upon both parties with the proviso that the decisions of the arbitrators which would require legislative enactment to be effective shall be considered advisory only.

3. Article 1, Section 17 of the Pennsylvania Constitution provides "No *ex post facto* law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed."

4. The Association also argued in its petition for review that the Award now requires bargaining unit members to serve 20 years of

## I.

Addressing the first item of the award relating to retirement health care, the Association argues that the Award increasing the 1% retirement contribution rate up to 3% constitutes a diminishment of a retirement benefit which was in excess of the Board's authority under Article I, Section 17 of the Pennsylvania Constitution.[3] Relying on *Association of Pennsylvania State College and University Faculties v. State System of Higher Education,* 505 Pa. 369, 479 A.2d 962 (1984), the Association contends that the diminishment of retirement benefits for present employees is prohibited by Article I, Section 17 of the Pennsylvania Constitution.[4]

The Commonwealth, however, contends that the Association has waived this constitutional argument on appeal because it was never raised below before the arbitration panel. We agree. Pa. R.A.P. 1551(a) provides that any issue not raised before a "government unit" is considered waived on appeal. Pa. R.A.P. 101 defines "government unit" to include "a board of arbitrators whose determination is subject to review under 42 Pa.C.S. § 763(b) (awards of arbitrators)." 42 Pa.C.S.

---

service instead of 15 before being eligible for retirement health care. *See* Item No. 4 regarding Article 24—(REHP Grandfathering Provision) which allows an employee with at least 15 years of credited service as of September 1, 2008, or 13 years of service and is within one year of superannuation age as of September 1, 2008, to be eligible to elect REHP health coverage upon reaching superannuation age rather requiring the employee to have 20 years of credited service. We have also reviewed the 2005 CBA which essentially had the identical provision. No change was made to the 2008 CBA except for the date on which it would become effective, August 31, 2008. Because the Association had 30 days under 42 Pa. C.S. § 7314(b) within which to file a dispute to the award but did not, the Association is out of time to raise the issue.

§ 763(b), entitled "Direct appeals from government agencies/awards of arbitrators," gives this Court exclusive jurisdiction of all petitions for review of an award of an arbitrator disputed between the Commonwealth and Commonwealth employees or their representative/union. *See Town of McCandless v. McCandless Police Officers Association,* 677 A.2d 879 (Pa. Cmwlth.1996). Under Pa. R.A.P. 1551(a), issues not raised before the arbitrator are waived on appeal before this Court.

Our review of the record indicates that during the arbitration process, the Commonwealth presented its proposed changes to the CBA regarding the increased retirement contributions, but the Association never raised any arguments that the proposed changes were prohibited by Article I, Section 17 of the Pennsylvania Constitution. Consequently, because the issue was never raised, it is now waived on appeal before this Court.[5]

## II.

The Association challenges the method set forth in Article 8, Section 1 of the Award for addressing grievances involving food provided to the bargaining unit. It states:

*EATING AND SANITARY FACILITIES*

Article 8, Section 1, shall be amended to include the following:

Food provided to the bargaining unit shall be fresh and edible. In the event that a grievance is filed related to the provision, the grievance may be pursued only through Step 2 of the H–1 Alternative Dispute Resolution Process and the decision of the Joint Committee shall be final and binding.[6]

■ By substituting the alternative dispute resolution process for mandatory arbitration, the Association contends that provision is unlawful because it is contrary to Section 903 of PERA which requires that the final step of any grievance dispute resolution be a binding decision by an arbitrator or a tri-partite board of arbitrators.[7] Section 903 of PERA, 43 P.S. § 1101.903, provides, in relevant part:

Arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory. The procedure to be adopted is a proper subject of bargaining with the proviso that the final step shall provide for a binding decision by an arbitrator or a tri-partite board of arbitrators as the parties may agree. Any decisions of the arbitrator or arbitrators requiring legislation will only be effective if such legislation is enacted.

The plain language of Section 903 makes arbitration **mandatory** for the resolution of any disputes or grievances arising out of

---

**5.** Even if the issue was properly raised, we have addressed this issue in *City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge No. 1,* 850 A.2d 846 (Pa.Cmwlth.2004) (*FOP I*); *City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge No. 1,* 595 Pa. 47, 938 A.2d 225 (2007) (*FOP II*).

**6.** Prior to the Award, Article 8, Section 1 provided the following:

The Employer shall provide adequate eating space and sanitary facilities at all permanent locations, which shall be properly heated and ventilated.

**7.** The Association also points out that the joint committee is formed of an equal number of employer and union representatives and in the event that the joint committee deadlocks, the Association would not be permitted to proceed to arbitration under the award as it only allows for processing through Step 2 of the H–1 alternative dispute resolution process. It contends that this is clearly contrary to Section 903 and beyond the authority of the Board.

the interpretation of the provisions of a collective bargaining agreement. Nowhere under Section 903 does it allow for the Board to issue an award to "pursue a grievance only through Step 2 of the H–1 Alternative Dispute Resolution Process" which shall then be decided by the joint committee and shall be final and binding. Because this portion of the Award by the Board is clearly in excess of its authority, it is vacated and that provision is subject to grievance arbitration.

## III.

 Finally, while not disputing that the arbitration panel could prohibit its members' use of tobacco in correctional facilities, the Association contends that Article 33, Section 32 inserted in the CBA is illegal under Sections 701 and 702 of PERA [8] because it impermissibly changes its members' use of tobacco from a mandatory subject of collective bargaining to a managerial prerogative. That provision provides:

> Policies concerning tobacco use at the work site, including prohibitions against tobacco use, may be established by the Commonwealth after meet and discuss with the Association.

Without saying so, it seems to be saying that the change occurred when the arbitra-

tion panel made tobacco use a "meet and discuss" issue, which, in labor relations parlance, normally deals with issues over which an employer does not have to bargain but just has to give advance notice. However, in the context of this award, by requiring the Commonwealth to meet and discuss with the Association prior to implementing changes where tobacco could be used, the arbitration panel did not remove tobacco use from mandatory bargaining nor could it do so.

What the arbitration panel did was give the Commonwealth discretion to determine where tobacco use was permitted at the work site—which the Association agrees that it could lawfully do. By adding the "meet and discuss" requirement, the arbitration panel did not change the term from a mandatory to a non-mandatory subject of bargaining, but required the Commonwealth to extend the courtesy of discussing the issue before unilaterally implementing the policy. *See also Pennsylvania State Troopers' Association v. Pennsylvania Labor Relations Board,* 671 A.2d 1183 (Pa. Cmwlth.1996). While "meet and discuss" applies to when the Commonwealth wants to implement to tobacco use policy, if a dispute as to whether an area is a worksite—the mandatory grievance arbitration required by Section 903 of PERA would

---

**8.** Section 701 of PERA, 43 P.S § 1101.701, provides:

> Collective bargaining is the performance of the mutual obligation of the public employer and the representative of the public employes to meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment, or the negotiation of an agreement or any question arising thereunder and the execution of a written contract incorporating any agreement reached but such obligation does not compel either party to agree to a proposal or require the making of a concession.

Section 702 of PERA, 43 P.S. § 1101.702, provides:

> Public employers shall not be required to bargain over matters of inherent managerial policy, which shall include but shall not be limited to such areas of discretion or policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, the organizational structure and selection and direction of personnel. Public employers, however, shall be required to meet and discuss on policy matters affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by public employe representatives.

have to follow. Moreover, tobacco use remains a subject of bargaining in negotiating or arbitrating succeeding collective bargaining agreements.

Accordingly, the order of the arbitration panel is affirmed as to increasing the retiree contribution rate under Article 24 of the CBA and allowing for policies to be established by the Commonwealth regarding the use of tobacco at the work site after a "meet and discuss" with the Association under Article 33, Section 33 of the CBA. However, the arbitration panel's award under Article 8, Section 1 regarding the use of the alternative dispute resolution process is vacated and is subject to collective bargaining.

### *ORDER*

AND NOW, this 13th day of July, 2009, the interest arbitration award of the board of arbitration dated September 12, 2008, is affirmed as to increasing the retiree contribution rate under Article 24 of the collective bargaining agreement and allowing for policies to be established by the Commonwealth regarding the use of tobacco at the work site after a "meet and discuss" with the Pennsylvania State Corrections Officers Association under Article 33, Section 33 of the collective bargaining agreement. However, the arbitration panel's award under Article 8, Section 1 regarding the use of the alternative dispute resolution process is vacated and is subject to collective bargaining.

### CONCURRING AND DISSENTING OPINION BY Senior Judge FRIEDMAN.

I agree with the majority that the workplace tobacco use provision of the interest arbitration award (Award) does not require that the Commonwealth of Pennsylvania (Commonwealth) violate section 701 of the Public Employe Relations Act (PERA).[1] However, I disagree that: (1) the Pennsylvania State Corrections Officers Association (Association) waived its challenge to the Award's increase in the retiree contribution rate for health care benefits;[2] and (2) the Award's failure to include arbitration as the final step in the procedure for food quality grievances requires that the Commonwealth violate section 903 of PERA.[3]

The Association and the Commonwealth were engaged in collective bargaining for an agreement that was to be effective on July 1, 2008, when the negotiations reached an impasse. The impasse was submitted to an arbitration panel, which, after a hearing, issued the Award. The Association has petitioned this court for review.[4]

---

1. Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. § 1101.701. Section 701 of PERA requires that a public employer and public employees confer in good faith with respect to wages, hours and other terms and conditions of employment. *Id.* The Award's tobacco use provision allows the Commonwealth to establish a workplace tobacco use policy after a meet and discuss with the union. As the majority states, there is no dispute that the arbitration panel could have prohibited smoking altogether. (Majority op. at 1240.)

2. The Award's retiree health care provision eliminates a 1% cap on the retiree contribution rate.

3. 43 P.S. § 1101.903. Section 903 provides that arbitration is mandatory for disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement. *Id.*

4. Our review of an appeal from an interest arbitration award includes questions regarding whether the arbitrators exceeded their powers. *Department of Corrections v. Pennsylvania State Corrections Officers Association,* 932 A.2d 359 (Pa.Cmwlth.2007), *appeal granted in part,* —— Pa. ——, 971 A.2d 1124 (2009). Arbitrators run up against the limits of their powers when they order an illegal act, i.e., the arbitrators direct the public employer to do that which the employer could not do voluntarily. *City of Pittsburgh v. Fraternal Order of Police,* 595 Pa. 47, 938 A.2d 225 (2007).

## I. Health Care Contribution Rate

The Association argues that the arbitration panel exceeded its power and deprived employees of their constitutional right to protection from laws impairing the obligation of contracts by issuing an award that eliminates the 1% cap on the contribution rate for retiree health care benefits.

### A. Waiver

The majority holds that this issue is waived pursuant to Pa. R.A.P. 1551(a) (stating, *inter alia,* that issues not raised before a "government unit" are waived unless the petitioner could not have raised the question by the exercise of due diligence) and Pa. R.A.P. 102 [5] (defining the words "government unit" to include an arbitration panel) because the Association did not raise it before the arbitration panel. However, the Commonwealth does not argue that the issue is waived pursuant to these rules; the Commonwealth argues that the issue is waived pursuant to Pa. R.A.P. 302(a) (relating to the waiver of issues not raised before a lower court), which does not apply here. (*See* Commonwealth's brief at 11–12.)

Moreover, this court recently rejected a waiver argument in an interest arbitration case, in part, because the party "did not know the provisions of the award before it was issued" and because the party "advanced its specific contentions of divergence at the earliest possible time through its prompt application for relief to the ... court." *City of Scranton v. Fire Fighters Local Union No. 60,* 964 A.2d 464, 489 (Pa.Cmwlth.2009). The same reasoning applies here.

Finally, this court has held that where there is an interest arbitration award, a party may assert the illegality of a provision of the award in a subsequent proceeding because the party had no opportunity to bargain with respect to the award's term. *Lee v. Municipality of Bethel Park,* 722 A.2d 1165 (Pa.Cmwlth.1999) (holding that a municipality that failed to challenge an interest arbitration award could assert the illegality of the award in a subsequent declaratory judgment action); *Borough of Dormont v. Dormont Borough Police Department,* 654 A.2d 69 (Pa.Cmwlth.) (holding that a borough that failed to challenge an interest arbitration award could assert the illegality of the award in a subsequent grievance arbitration proceeding) *appeal denied,* 541 Pa. 628, 661 A.2d 875 (1995). If the Association could raise any argument in a later proceeding to challenge the legality of the retiree contribution rate increase, it makes no sense to hold that the Association waived its argument on appeal. Thus, I now address the merits of the issue.[6]

### B. Merits of the Issue

In *Appeal of Upper Providence Township,* 514 Pa. 501, 526 A.2d 315 (1987), our supreme court held that arbitrators exceeded their powers, i.e., mandated a violation of law, when they eliminated post-retirement hospital and medical benefits in an interest arbitration award. The court based its holding on a **statutory provision** that prohibits home rule municipalities from diminishing the rights or privileges of any present or former employee in his pension or retirement system. *Id.*

In *City of Pittsburgh v. Fraternal Order of Police,* 595 Pa. 47, 938 A.2d 225 (2007), our supreme court held that arbitrators did not exceed their powers by placing a cap on the City's contribution to the cost of

---

**5.** Although the majority cites Pa. R.A.P. 101 for the definition of "government unit," the definition is contained in Pa. R.A.P. 102.

**6.** The majority suggests in a footnote that the Association cannot prevail on the merits, but the majority provides no analysis of the issue. (*See* majority op. at 1239 n. 5.)

health care for retiring officers. The court explained that, despite a **statutory provision** prohibiting the City from diminishing the rights and privileges of any present employee in his pension or retirement system, the arbitrators' award did not diminish any retirement rights and privileges because the cap on the City's contribution existed in the previous collective bargaining agreement. *Id.*

Here, the Association does not rely on any statutory provision that prohibits the Commonwealth from diminishing retiree health benefits. Instead, the Association correctly asserts that retiree health benefits are deferred compensation for services rendered in the past, thus reflecting a contractual right to the benefit. *Borough of Hanover v. Hanover Borough Police Officers Association,* 850 A.2d 765 (Pa. Cmwlth.2004) (stating that retiree medical benefits constitute deferred compensation for services actually rendered in the past, thus reflecting contractual rights), *appeal denied,* 582 Pa. 689, 870 A.2d 324 (2005); *Borough of Elizabethtown v. Elizabethtown Non–Supervisory Police Negotiating Committee,* 719 A.2d 1144 (Pa.Cmwlth. 1998) (holding that medical insurance benefits awarded in the future constitute deferred compensation for services rendered in the past).

The Association contends that, given the contractual right to the previously earned health benefits, the Award diminishing those benefits requires that the Commonwealth violate constitutional provisions prohibiting **laws** impairing the obligation of contracts. *See* U.S. CONST. art. I, § 10; PA. CONST. art. I, § 17. However, the elimination of the 1% cap on the retiree contribution rate for health care benefits is a bargaining agreement provision, not a law. Moreover, this court has stated that there is no legal authority limiting the ability of arbitrators to modify retirement benefits as part of interest arbitration. *City of*

*Pittsburgh v. Fraternal Order of Police,* 911 A.2d 651 (Pa.Cmwlth.2006) (citing *City of Wilkes–Barre v. City of Wilkes–Barre Police Benevolent Association,* 814 A.2d 285 (Pa.Cmwlth.2002), *appeal denied,* 573 Pa. 686, 823 A.2d 146 (2003)), *aff'd on other grounds,* 595 Pa. 47, 938 A.2d 225 (2007).

Accordingly, I would affirm the Award's retiree health care contribution rate provision.

## II. Arbitration for Food Grievances

The Award requires that food provided to members of the bargaining unit be fresh and edible and that, "[i]n the event that a grievance is filed related to this provision, the grievance may be pursued only through Step 2 of the H–1 Alternative Dispute Resolution (ADR) Process and the decision of the Joint Committee shall be final and binding." (Association's brief at 20.) Step 3 of the ADR Process would have allowed an appeal to an impartial arbitrator from a deadlocked decision at Step 2. (R.R. at 68a–69a.)

The Association argues that, in eliminating Step 3 arbitration, the award mandates that the parties to the agreement violate section 903 of PERA, which provides, in pertinent part:

> **Arbitration** of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement **is mandatory.** The procedure to be adopted is a proper subject of bargaining with the proviso that the **final step shall provide for a binding decision by an arbitrator** or a tri-partite board of arbitrators as the parties may agree....

43 P.S. § 1101.903 (emphasis added). However, this court stated in *Municipal Employees Organization of Penn Hills v. Municipality of Penn Hills,* 876 A.2d 494 (Pa.Cmwlth.), *appeal denied,* 586 Pa. 731, 890 A.2d 1062 (2005), that arbitration is

mandatory under section 903 of PERA **unless** the union expressly waives the statutory right. Because the Association can voluntarily waive the statutory right to arbitration, the Award does not mandate an illegal act.[7]

Accordingly, I would affirm the Award on this issue.

---

[7] To the extent the majority holds that the Association could not waive the statutory right to arbitration, the majority implicitly overrules *Penn Hills*. However, a three-judge panel of this court cannot overrule another three-judge panel decision of this court.